# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JOHN ALLEN BALDRIDGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-152-SPS** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant John Allen Baldridge requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born December 23, 1970, and was forty-two years old at the time of the administrative hearing (Tr. 160). He has a high school equivalent education, and has worked as a construction worker (Tr. 47, 61). The claimant alleges that he has been unable to work since an amended onset date of March 20, 2012, due to mental health problems, back problems, a hearing impairment, poor reading and writing, seizures since childhood, a sleep disorder, nightmares, and hallucinations (Tr. 50, 178).

## Procedural History

On March 20, 2012, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled if he stopped substance abuse in a written opinion dated February 11, 2014 (Tr. 11-34). The Appeals Council denied review, so the ALJ's opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, he determined that the claimant had the severe impairments of history of seizures, severe stenosis at L5-S1 with chronic back pain, hepatitis C, schizoaffective disorder (bipolar type), posttraumatic stress disorder ("PTSD"), social phobia, antisocial personality disorder, learning disorder not otherwise specified, and alcohol and drug abuse in partial remission (Tr. 14). He determined that, based on all of his severe impairments, the

claimant retained the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 416.967(b), except he could occasionally balance, stoop, crouch, crawl, and climb ramps and stairs; must avoid exposure to dangerous machinery and unprotected heights; must avoid frequent exposure to extreme heat and cold; required a sit/stand option with no more than one change every half hour, and without leaving the workstation; was limited to simple tasks with routine supervision; could tolerate occasional contact with co-workers and supervisors, but no contact with the general public; and due to alcohol abuse, would be off task twenty percent of the time with a corresponding twenty percent reduction in productivity (Tr. 16). The ALJ concluded that the limitations from all of the claimant's impairments, including substance abuse disorders, limited the range of light work such that a finding of disabled was required (Tr. 25). When the ALJ continued with his inquiry by factoring out the claimant's substance abuse, he found the claimant had the same RFC, except that he would no longer be off task twenty percent of the time with a corresponding twenty percent reduction in productivity (Tr. 27-28). The ALJ then concluded that although the claimant could still not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, electronics assembler and small products assembler (Tr. 31-32). Thus, the ALJ found the claimant's substance abuse was a contributing factor material to the determination of disability (Tr. 33-34).

**Review**

The claimant contends that the ALJ's determination that substance abuse was material to his disability is not based on substantial evidence. The undersigned Magistrate Judge agrees.

The relevant medical evidence reveals that providers at Redbird Smith Health Center managed the claimant's psychotropic medication from February 2007 until November 2011 (Tr. 266-310). The claimant's mental health related diagnoses included schizophrenia, mood disorder, insomnia, bipolar disorder, alcohol dependence, and polysubstance use (Tr. 266-310).

The claimant presented to the Sequoyah Memorial Hospital Emergency Department ("SMHER") for emergent care of alcohol overdose on December 24, 2010, December 24, 2011, and December 31, 2011 (Tr. 312-422). The claimant had suicidal ideation on December 24, 2010, suicidal and homicidal ideation on December 24, 2011, and December 31, 2011, and was experiencing hallucinations on December 31, 2011 (Tr. 314, 332, 377). The claimant's discharge diagnoses included, *inter alia,* alcohol intoxication (resolved), polysubstance abuse, psychotic disorder (unspecified), depression, acute psychosis, and PTSD (Tr. 321, 330, 412).

The claimant initiated mental health treatment at CREOKS Behavioral Health Services in January 2012 which he continued through August 2013 (Tr. 428-55, 528-49, 677-84). He received both individual psychotherapy and medication management (Tr. 441-55, 541-49, 677-84) At the outset of treatment, Kari Dry, a licensed professional counselor, performed a mental status examination on February 3, 2012

(Tr. 528-40). She noted the claimant was alert and oriented to person, place, time, and situation, denied suicidal and/or homicidal ideation for the previous two weeks, answered questions appropriately and without hesitation, and did not have difficulty tracking conversation (Tr. 533). The claimant reported depression, anxiety, short-term memory problems, and auditory hallucinations and frequent nightmares which impaired his sleep (Tr. 533-34). As to his alcohol use, the claimant reported drinking a "fifth of whiskey" three to four times per week "to kill the pain," and that he had done so the previous night (Tr. 534). Ms. Dry diagnosed the claimant with PTSD, major depression disorder with psychotic features, alcohol abuse, and social phobia, and rated the severity of his impairments as moderate (Tr. 536-37).

On May 6, 2012, the claimant reported a suicidal gesture to a provider at CREOKS, and was subsequently admitted to the Oklahoma County Crisis Intervention Center for inpatient medical management (Tr. 457-78). Two days later, the claimant was stable, had no suicidal or homicidal ideation, and no evidence of psychosis (Tr. 463). Dr. Margo Shultes von Schlageter recommended that the claimant abstain from alcohol and/or drug use and adhere to recommended medical treatment (Tr. 475). She diagnosed the claimant with, *inter alia,* PTSD, alcohol abuse, and cannabis dependence, and discharged him on May 9, 2012 (Tr. 463, 475).

On May 10, 2013, the claimant was transported to SMHER, where he was intubated due to respiratory failure caused by an intentional drug overdose (Tr. 551-72). A CT scan of the claimant's brain conducted that day was normal (Tr. 565). The claimant was subsequently transferred to Mercy Hospital at Fort Smith for further

evaluation (Tr. 553, 580-650). In a discharge summary dated May 13, 2013, Dr. Muhammad Hasan diagnosed the claimant with, *inter alia,* intentional drug overdose, suicide attempt by drug ingestion, chemical dependency, depression, schizophrenia, bipolar disorder, and alcohol intoxication (resolved), and discharged him to Springwoods Behavioral Health ("SWBH") for dual diagnosis (Tr. 609-11). The claimant was treated at SWBH from May 13, 2013, through May 20, 2013 (Tr. 657-74). Dr. Rachel Fiori noted the claimant was able to integrate into the therapeutic setting relatively well, and attended, processed, and appropriately participated in the majority of groups and activities, however, he reported intermittent suicidal and homicidal ideation throughout his stay (Tr. 658). At discharge, the claimant reported improved depression, decreased anxiety, vastly improved hallucinations, and denied suicidal or homicidal ideation (Tr. 658). Dr. Fiori's prognosis for the claimant was "[f]air as long as [he] follows all treatment regimens and abstains from all mood altering substances." (Tr. 658).

On September 10, 2013, the claimant presented to SMHER and reported an overdose of psychotropic medications (Tr. 686-90). The claimant was subsequently transferred to Wagoner Community Hospital where he received inpatient treatment from September 10, 2013, through September 16, 2013 (Tr. 675, 686). On his psychiatric discharge summary, Dr. Sangal Shalini noted the claimant denied thoughts of suicide or homicide, was interacting well, and could hold logical conversations (Tr. 675). The claimant reported that the "voices" had calmed down considerably, and that he was not having any bad dreams (Tr. 675). Dr. Sangal diagnosed the claimant with schizoaffective disorder, bipolar type, severe, and polysubstance abuse (Tr. 675).

Diane Brandmiller, Ph.D., conducted a psychological consultative examination of the claimant on June 5, 2012 (Tr. 482-86). The claimant reported last drinking alcohol two months prior and indicated he drank two or three times per year (Tr. 484). He also reported hallucinations occurring as recently as two days earlier (Tr. 484). Dr. Brandmiller noted the claimant smiled when he acknowledged thought of harming others, and laughed when he discussed his suicidal thoughts (Tr. 484). She stated his thought processes were disorganized at times, and that he thinks people are following him and trying to hurt him and his mother (Tr. 484). She found that the claimant's long-term memory was consistent, his concentration appeared impaired, his abstract thinking appeared mildly impaired, and that he would have difficulty understanding and carrying out simple instructions (Tr. 486).

State reviewing psychologist Dr. Joan Holloway reviewed the claimant's records on June 28, 2012 (Tr. 496-514). She concluded on the Psychiatric Review Technique Form (PRT) that the claimant had moderate limitations in activities of daily living, social functioning, and in maintaining concentration, persistence, or pace, and had experienced three episodes of decompensation (Tr. 506). Dr. Holloway stated that the claimant's substance abuse interfered with his functioning and opined that it was likely responsible for many of his psychotic symptoms, because ". . . visual hallucinations are unusual unless there is an organic factor or substance abuse." (Tr. 508). She concluded that claimant's substance abuse was material (Tr. 508). Dr. Holloway also noted that "[t]here does not seem to be a period of functioning without substance abuse." (Tr. 510).

At the administrative hearing, the claimant testified that he was unable to work because he was afraid of being around people and experienced hallucinations five or six times per week where he is instructed to harm himself and others (Tr. 49-50, 56-57). As to his alcohol use, he stated that he consumed two beers in the past month, and that the longest period he abstained from drinking alcohol was five months, which occurred "probably eight months ago." (Tr. 50-51). Regarding drug use, the claimant stated he smoked marijuana to relieve stress and pain in his back, and that he had done so twice in the past five months (Tr. 51-52, 56).

"An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). When drug abuse is present, the ALJ's task is to determine first whether the claimant is disabled. If the ALJ finds that the claimant is disabled, then the ALJ determines whether the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a). The issue to be resolved is whether the claimant would still be found disabled if the claimant stopped using drugs. 20 C.F.R. § 416.935(b). To resolve this issue, the ALJ evaluates which of the claimant's limitations "would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 416.935(b)(2). If the remaining limitations are deemed not disabling, then the claimant's drug addiction or alcoholism is considered a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(i). Conversely, if the

remaining limitations are deemed disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(ii).

Soc. Sec. Rul. 13-02p sets out further guidance regarding the process for analyzing whether drug addiction and alcoholism ("DAA") is a material contributing factor. Soc. Sec. Rul. 13-02p, 2013 WL 621536 (Feb. 20, 2013). "[We] must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA . . . We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA." *Id*. at \*9.

As support for his determination that the claimant's substance abuse was a material factor contributing to his disability, the ALJ relied heavily on discharge notes from the claimant's inpatient hospitalizations, as well as the opinion of state agency psychologist Dr. Holloway, which he assigned "great weight" (Tr. 28, 30). Dr. Holloway noted the claimant's improvement with hospitalization in support of her materiality finding, specifically referencing only his inpatient hospitalization at Oklahoma County Crisis Intervention Center (Tr. 508). However, reliance on improvement while in the highly structured environment of a hospitalization is improper. Where "[i]mprovement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use . . . In

addition, a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder—with or without treatment for DAA—is an indication that DAA may not be material even if the claimant is discharged in improved condition after each intervention." *Id*. at *12–13.

As additional support for his materiality determination, the ALJ also relied on CREOKS treatment notes from August 2012, October 2012, and February 2013, dates he determined were periods where the claimant abstained from alcohol and reported improved symptoms (Tr. 28-29).  Notably, none of these treatment notes indicate a period of abstinence (Tr. 541-42, 548).  In fact, the 2012 treatment notes do not reference the claimant's alcohol use at all, and the February 2013 treatment note indicates only that the claimant has a history of alcohol abuse (Tr. 541-42, 548).  The ALJ even acknowledged that the CREOKS treatment notes did not always explicitly mention substance use or periods of abstinence (Tr. 28-29).  The ALJ appears to have *presumed* that the claimant was not consuming alcohol in August and October 2012 because the treatment notes did not reference any alcohol consumption.  However, "[t]he absence of evidence is not evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1491 (10th Cir. 1993).  As to the February 2013 treatment note, the ALJ deduced it was a period of abstinence based on the claimant's testimony at the October 2013 administrative hearing that he abstained from alcohol for a five-month period "probably eight months ago" (Tr. 29, 50-51).  As the claimant points out, he was not definite with his response, thus the evidence that February 2013 was a period of abstinence is ambiguous at best.  This hardly constitutes

evidence that the claimant would not be disabled in the absence of DAA. *See* Soc. Sec. Rul. 13-02p, 2013 WL 621536, at *8.

Furthermore, the ALJ noted the claimant's medications were working well and were well tolerated, that his depression improved, and that he had no suicidal or homicidal ideation in October 2012, but ignored that the claimant simultaneously reported an increase in hallucinations and paranoia (Tr. 541-42). Although the ALJ did note the claimant's hallucinations and paranoia were worse when he ran out of medication in August 2012, he ignored that the claimant was nonetheless experiencing hallucinations during this period of purported abstinence (Tr. 28). Similarly, the ALJ noted the claimant's paranoid delusions in February 2013, but did not discuss them further, stating only that he did not have suicidal, homicidal, or violent ideation (Tr. 29). Thus, the ALJ engaged in improper picking and choosing among the medical evidence. *See Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.") [citation omitted]. This was a particularly important omission in this case because the claimant indicated hallucinations were one of the most significant reasons why he was unable to work (Tr. 50).

Because the ALJ failed to properly analyze the materiality of the claimant's substance abuse, the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical and other source evidence of record.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 1st day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**